**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ABIGAIL F. RANSOM, et al.** | § | |
| | § | |
| **V.** | § | **A-10-CA-857 AWA** |
| | § | |
| **M. PATEL ENTERPRISES, INC., et al.** | § | |

**ORDER**

Before the Court are the Plaintiffs' Opposed Motion for Attorney Fees and Related Non-Taxable Expenses (Clerk's Doc. No. 181); the Defendants' Objection to the Plaintiffs' Request for Attorneys' Fees (Clerk's Doc. No. 182); and the Plaintiffs' Reply (Clerk's Doc. No. 186). The Plaintiffs supplemented their motion (Clerk's Doc. No. 190), and the Defendants filed a sur-reply (Clerk's Doc. No. 191).[1]

**I. Background**

This case was tried to a jury, and on November 14, 2011, the jury returned a verdict finding that the Defendants had misclassified the Plaintiffs as exempt employees.[2] The jurors also found that the Defendants' misclassification was not willful. The Court, in a separate order, made findings regarding the appropriate method of calculating damages, and found that the misclassifications were not made in good faith, thereby entitling each Plaintiff to liquidated damages in an amount equal to their actual damages. Clerk's Doc. No. 177. Based on these findings, the Court entered judgment

---

[1]The Defendants labeled their motion for leave to file a sur-reply as opposed, but the Plaintiffs filed a response indicating that they do not oppose the motion. Therefore, the Court GRANTS the Defendants' Motion for Leave to File a Sur-Reply (Clerk's Doc. No. 191).

[2]Prior to trial, the parties filed cross-motions for summary judgment on both liability and the proper damage calculation methodology (Clerk's Doc. Nos. 53, 78, 83, and 84), all of which the Court denied, though it did write at length on the issue of damages. (Clerk's Doc. Nos. 102, 125).

for the Plaintiffs for $135,036.26 for unpaid wages and liquidated damages, along with costs of court.

The Plaintiffs now move for $340,644.03 in attorneys' fees and costs.[3] The Defendants oppose the request, and seek to reduce the amount for several reasons. First, they claim that the Plaintiffs "were relatively unsuccessful," as they only recovered 36 percent of what they were requesting in damages, and because they did not establish that the Defendants violated the FLSA willfully. The Defendants also go further and argue that the Plaintiffs' damage proposal was made in bad faith, and thus contend that the Plaintiffs should not receive any attorneys' fees related to their damage arguments. Finally, they argue that the Plaintiffs expended too much time on the case and one of their attorney's hourly rate is too high.

## II. The Appropriate Amount of Attorney's Fees [4]

The Fifth Circuit uses a two-step process to calculate attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* "After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson v.*

---

[3]In their original motion, the Plaintiffs requested $325,857.50 in legal fees, $1,880.37 in out-of-pocket expenses, and $6,883.66 contained in their bill of costs. Clerk's Doc. No. 181 at 10. The Plaintiffs later filed a supplement requesting an additional $6,022.50 in attorneys' fees. Clerk's Doc. No. 190.

[4]Neither party disputes that, as prevailing parties, the Plaintiffs are entitled to their fees under the FLSA. The relevant statutory language provides that the "court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, the dispute before the Court is centered on how much in the way of fees and costs the Court should award.

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Id.* Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Id.* at 1043 n.5 (citing *Johnson*, 488 F.2d at 717–19). Ultimately, however, there is a "strong presumption that the lodestar award is the reasonable fee." *Id.* at 1044.

**A. Reasonable Rate**

The Plaintiffs request the rates of $325 an hour for Edmond Moreland, $350 an hour for David Weiser, and $180 an hour for Adam Casner. They also seek $60 an hour for their legal assistant, Jennifer Sabatier. The Defendants do not contest the rates for Weiser, Casner, or Sabatier, but they do challenge Moreland's rate.

To support Moreland's rate, the Plaintiffs compare it to the rates of other lawyers in the community. For example, they note that the partners at Ogletree, Deakins, Nash, Smoak & Stewart—a firm focused on employment defense work—command a median hourly rate of $389. And a 2011 *Texas Lawyer* survey indicates that equity partners in the Austin and San Antonio region billed on average $372 an hour in 2010, and $386 an hour in 2011. Non-equity partners billed at $327 an hour in 2010, and $337 an hour in 2011. The Plaintiffs note that Moreland—the lead counsel in the case—has been practicing labor and employment law for his entire 15-year career, has been board certified in labor and employment law for nearly ten of these years, and has been named

by *Texas Monthly* magazine as a "Rising Star" Super Lawyer in the employment field every year since 2004. The Plaintiffs also attach affidavits from several attorneys practicing in the Austin area: co-counsel David Weiser, John Judge from Judge, Kostura & Putman, P.C., and Philip Durst from Deats, Durst, Owen and Levy, P.L.L.C. All three lawyers express their familiarity with the legal market in Austin and the prevailing rates of attorneys. And all three agree that Moreland's hourly rate of $325 is reasonable and within the range of fees charged by attorneys of similar experience and skill.

The Defendants contest Moreland's rate on several grounds. They argue that the court should award less because the Defendants' attorneys, Justin Welch and Julie Ploughman, only charged the Defendants hourly rates of $250 and $225, respectively. They argue that these rates better represent the market because they are the result of an arms length transaction, while the Plaintiffs' rates presumably are not. They also assert that Moreland's rate should be compared to their rates instead Ogletree, Deakins' rates, because U.S. News and World Reports ranked Ogletree as the law firm of the year for employment issues, while Moreland's (and presumably Welch's) firm was not ranked.

These arguments have several flaws. Welch's and Ploughman's rates do not set the market for Austin. Obviously the rates of two lawyers from a single firm—particularly a self-described "full service" firm of 9 attorneys competing with much larger firms—is too small a sample to use for determining the market. Indeed, the firm's size alone suggests that to compete with larger, more heavily leveraged firms, it must do so primarily on price. The Defendants offer no evidence—other than their own rates—to contest the evidence set out above regarding the prevailing rates of equity and non-equity partners in the Austin and San Antonio area. And their challenge to Moreland's skill level relative to Ogletree relies on an arbitrary and relatively unpersuasive source, the U.S. News

rankings. Similarly, the comparisons they attempt to draw between Moreland and themselves fail, because while Welch is a trial attorney, he is not an employment law specialist, and although Ploughman specializes in employment law, she is not a trial attorney (judging from the fact that she did not take a speaking role at trial despite being present for its entirety). Moreland is both, and that obviously makes a difference to what a reasonable rate for his time is. The Plaintiffs' evidence supports their contention regarding the prevailing rates in this area, and Moreland's skill level and experience places him squarely within that range.

The Defendants also argue that it is inappropriate to award fees for Moreland based on a rate charged by a large firm with a large overhead, given that Moreland is a small practitioner officing in a "roughly 600 square foot, free-standing, frame building in the rural town of Wimberley, Texas." Reply at 16. They further note that Blazier, Christensen, Bigelow & Virr, P.C., Welch and Ploughman's firm, is located "in a downtown high rise two blocks from the federal courthouse," and yet even with this apparently higher overhead they charge less than what Moreland is requesting. *Id.*[5] Leaving aside the pomposity of this argument, it too misses the mark. The simple fact is that what an attorney's overhead costs are is not a factor in determining the reasonableness of his or her fees. The lodestar calculation uses an "appropriate hourly rate in the community" and *Johnson* does not include a factor for office costs. Tellingly, Defendants cite not a single authority for this argument, likely because there are none.

---

[5]Notably, the Defendants offer no evidence of Mr. Moreland's actual space overhead cost, but rather simply assume that the lease costs of their office space are higher per lawyer than the space costs Moreland incurs. But without knowing the structure of Moreland's space arrangement—e.g., ownership vs. lease—the Court is unwilling to indulge that assumption.

The Court concludes that Moreland's requested hourly rate of $325 is reasonable in light of his experience and skill and the rates of similar attorneys practicing in the Austin area.

**B. Hours Worked**

The Defendants challenge several of the Plaintiffs' billing entries for insufficient explanatory detail. In the Plaintiffs' reply, Moreland explained that his records do not always include substantive details in order to protect attorney-client privileged information. Attached to his response is a supplement providing more detail. This additional information supports that the hours were properly related to the lawsuit.

The Defendants also argue that the Plaintiffs' voluntary exclusion of 138.5 hours from their fee request is a tacit admission that some of their time was not reasonably recoverable, and they question why there are not more hours excluded. This argument goes nowhere. The Court does not view the Plaintiffs' exclusion of the hours as nefarious, but rather sees it as a demonstration of their attempt to be reasonable in what they are seeking in fees. Moreover, other than this sort of speculation, the Defendants offer no basis to question the number of hours Plaintiffs' counsel spent on the case. Notably, unlike with their hourly rates, the Defendants do not volunteer the number of hours they expended on the case. Given how prolific they were with their briefing and arguments, the Court is guessing that defense counsels' hours are quite similar to those of the Plaintiffs. Moreover, many of the hours the Plaintiffs' attorneys spent on the case were the direct result of the vigorousness with which the Patels defended the case. The very motion before the Court is a prime example of this.[6]

---

[6]Since the time the motion became ripe, the Plaintiffs have spent more time on the case because the Defendants objected to their motion and filed a motion for a new trial. In their supplement, the Plaintiffs state that Moreland spent another 12.5 hours and Weiser spent another 5.6

The Court finds that, as adjusted, the hours requested by the Plaintiffs' attorneys were reasonably incurred in prosecuting the case, and are thus compensable. This includes the hours detailed in the Plaintiffs' supplement, Clerk's Doc. No. 190.

**C. The Defendants' Challenges to the Lodestar Amount**

In addition to challenging the Plaintiffs' rates, the Defendants seek to reduce the lodestar amount based on their perception that the Plaintiffs did not sufficiently succeed at trial. Included in this argument is an assertion that the Plaintiffs argued in bad faith in claiming that the Court should not use the fluctuating workweek method to calculate damages. The Defendants also assert that the ratio between the attorneys' fees requested and the Plaintiffs' recovery justifies a reduction in the lodestar amount.

**1. The Plaintiffs' success on the issue of damages.**

First, the Defendants contend that because the Court rejected the Plaintiffs' damage model, the Plaintiffs recovered only 36% of the amount they sought at trial.[7] What the Defendants conveniently ignore, however, is that the Court rejected *their* damage model as well. In the same paragraph that the Defendants state that the FWW method is "the method used by the Fifth Circuit, six other Circuit Courts, and the U.S. Supreme Court," Reply ¶7, they argue that the Plaintiffs failed *when the court did not apply the FWW method*. Contrary to the Defendants' argument, as between the two damage models, the Court clearly favored the Plaintiffs'. Whether the Defendants are

---

hours.

[7]The Plaintiffs' model took their weekly salaries, divided them by 40 to determine the regular rate, and then awarded them overtime of one-and-a-half times that rate for all hours over 40. The Court ultimately used a 55-hour standard workweek to determine the regular rate, and then awarded 50% of that rate for hours from 40–55, and 150% of that rate for all hours over 55.

oblivious to this fact, or are simply trying to "spin" the facts, is ultimately irrelevant—the Defendants urged the Court to use a strict FWW method to calculate actual damages and award only $39,360.23, but the Court rejected this argument, and ultimately awarded the Plaintiffs $135,036.26.[8] Thus, while the Plaintiffs obtained only 36% of their requested damages, that amount also represents nearly 300% of the damages that the Defendants contended were due.

Indeed, there is some irony in the Defendants' position. The Defendants repeatedly argued that the Court should have entered summary judgment because there was no real dispute that the Plaintiffs were correctly classified as exempt, and have made it plain throughout that they believed they had a strong case. Yet the Plaintiffs prevailed at trial. With such strong evidence against them, it seems fair to conclude that the Plaintiffs' success was at least in part attributable to their counsel's skill.

**2. Plaintiffs' damage position as a "bad faith" argument.**

Finally, to the Defendants' claim that the Plaintiffs' arguments against the FWW method were made in bad faith. There is so much wrong with this argument that it is difficult to know where to begin. Thus, the Court will start with the first argument the Defendants make.

The Defendants begin by contending that "Plaintiffs have always considered the fluctuating workweek method proper." This is surprising because the Plaintiffs vigorously advocated against the FWW method at every stage of the case. Defendants support this claim by stating that it appears

---

[8]The Court recognizes that this amount includes liquidated damages. But in judging the magnitude of the Plaintiffs' success it is appropriate to include liquidated damages in light of Defendants' argument that the Plaintiffs did not succeed because they did not convince the jury that Defendants willfully violated the FLSA. To receive liquidated damages, the Plaintiffs had to convince the Court that the Patels violated the FLSA in bad faith, and thus the damages that flowed from this are a proper part of the measure of the Plaintiffs' success.

that Plaintiffs' April 2011 settlement offer was based on a FWW damage model. Defendants' Objections ¶¶ 19–22. The very reason that settlement discussions are inadmissible is so that litigants aren't discouraged from compromising their claim by being on the receiving end of the very sort of argument the Defendants make here. By definition, settlements involve a discounting of one's claims. So the fact that the Plaintiffs may have used the FWW method to make a settlement offer has nothing to do with whether they were acting in bad faith in advocating a different damage methodology in court. Indeed, the Defendants' argument neglects to consider two important facts: (1) as already explained, the Court agreed with the portion of the Plaintiffs' argument that fought against a strict application of the FWW method; and (2) the Plaintiffs based their argument against the FWW method on an opinion written by me—the very judge hearing the case. It is hard to fathom how an attorney could possibly argue in bad faith by asking a judge to follow his own prior decision. Rather, it would likely be malpractice *not* to make such an argument.

A ridiculous assertion that also stands out—a not insignificant feat—is the claim that the Plaintiffs basically wasted "$312,000.00 in order to pursue a damage calculation they did not think was appropriate, and which was ultimately denied." Reply ¶ 29; *see also Id.* ¶ 3 ("Plaintiffs expended a stunning amount of time and effort arguing against the fluctuating workweek method."). The Defendants obtain this $312,000 figure by (inaccurately) subtracting the $55,000 in fees Plaintiffs indicated they would settle for in the April 22, 2011 offer, from the $362,000 in fees they incurred. *Id.* (The correct figure should be $307,000.) First, and most obviously, the Defendants rejected the settlement offer.[9] The best way for the Defendants to have prevented the Plaintiffs' alleged "overpreparation and overextension" would have been to settle the case. A lawyer of Mr.

[9]They countered with an offer of $10,000. Plaintiffs' Reply at 3 n.3.

Welch's tenure should not have been flummoxed to discover that, after he rejected his opponents' settlement offer, they proceeded to prepare for trial. Further, the argument assumes that every single dollar of fees expended after April 22, 2011—the date the settlement offer was made—was spent in the pursuit of damages. That is of course preposterous, as the billing statements evidence that countless of the hours Plaintiffs' counsel's expended during this period related to other aspects of the case.

Next, the Defendants say that the Plaintiffs' bad faith is demonstrated by their recovery of *only* $27,000 more than their settlement offer. Once again, the Defendants get here through bad math. The Plaintiffs' offered to settle the case for $120,000, but stated explicitly that this figure included attorneys' fees and costs approximated at $55,000. Therefore, Plaintiffs offered to compromise their *damage* claim for $65,000. The Court awarded Plaintiffs $135,036.26 in damages, which is not $27,000 more than $65,000. It is $70,036.26 more—more than twice the damages the Plaintiffs demanded in the offer. Perhaps most importantly, $135,000 is 13 times more than the *total* figure that the Defendants offered at that time to settle, and it does not include fees and costs. Having offered only $10,000 on a claim a jury and judge valued at $135,000 plus attorneys fees, the Defendants are in no position to complain about the additional fees incurred after these settlement discussions.

In the end, the Defendants' entire argument is based on a misunderstanding of the Court's order on damages. The Court adopted a hybrid of the two sides' methods, and in doing so it rejected portions of both sides' arguments. The Defendants vigorously argued that anything other than a strict application of the FWW was improper. They lost this part of the argument. The Plaintiffs made a two-fold argument: (1) the Court should apply the same reasoning as in its *EZPawn* decision;

but, barring that, (2) the Court should use a hybrid method. The Plaintiffs lost part one of this argument, but prevailed on part two. Thus, to suggest that the Plaintiffs were unsuccessful on the issue of damages ignores reality. But to go one step further, and assert that Plaintiffs' damage argument was made in bad faith is simply beyond the pale. As the Defendants know well, the undersigned authored an opinion in *In re EZPawn LP Fair Labor Standards Act Litig.*, 633 F. Supp. 2d 395 (W.D. Tex. 2008), concluding that the FWW was never appropriately applied to a misclassification case like this one. The Plaintiffs based their position on that opinion. To suggest that this was done in bad faith is so wrong that calling it "absurd" does it an injustice.

**3. The disproportionality of the fees to the damages recovered.**

The Defendants also suggest that the ratio of attorneys' fees to the Plaintiffs' recovery supports a downward departure from the lodestar amount under *Johnson*. The Fifth Circuit, however, has "declined to adopt rule of proportionality between damages and attorney's fees." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000). Further, this argument is disingenuous. During his opening statement to the jury, Welch stated that his client had spent "hundreds of thousands of dollars" defending the case. If it was appropriate to rack up hundreds of thousands of dollars in fees to defend a case of this size, how can it be disproportionate to do the same in prosecuting the case?

The Court recognizes that the total fees and costs sought—$340,644—is two-and-a-half times more than the damages recovered. But as has been discussed, this alone does not invalidate the fees. This was a complicated case, presenting a wide variety of difficult issues. There were 16 plaintiffs. The Plaintiffs were willing to settle the case for a reasonable amount—$120,000—but only received a $10,000 counter-offer. The Patels took an extremely aggressive approach to the case,

and defended it vigorously. This forced the Plaintiffs to respond accordingly and incur the fees necessary to take the case to trial. The Court concludes that in light of the facts and circumstances of this cases—a collective FLSA suit tried to a jury against a vigorous defense—this ratio is not so disproportionate as to require a reduction in the lodestar amount.

**IV. Conclusion**

The hourly rates sought are within the market rate for attorneys in this area with the same experience and skill. Further, the billing records support the hours worked on the case. None of the *Johnson* factors support a reduction in the lodestar amount. Therefore, the court HEREBY GRANTS the Plaintiffs' Opposed Motion for Attorney Fees and Related Non-Taxable Expenses (Clerk's Doc. No. 181) and ORDERS the Defendants to pay legal fees in the amount of $331,880.00, out-of-pocket expenses in the amount of $1,880.37, and costs in the amount of $6,883.66. A separate judgment for this amount will be entered contemporaneously.

SIGNED this 9th day of May, 2012.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE